1
2
3
4
5
6
7
8                        **UNITED STATES DISTRICT COURT**
9                        **CENTRAL DISTRICT OF CALIFORNIA**
10
11
12   LOLENE M.,
                                              Case No. 2:22-cv-03729-GJS
13             Plaintiff,
                                              **MEMORANDUM OPINION AND**
         v.
14                                            **ORDER**
15   KILOLO KIJAKAZI, Acting
     Commissioner of Social Security,
16             Defendant.
17
18                        **I.      PROCEDURAL HISTORY**
19        Plaintiff Lolene M.[1] filed a Complaint seeking review of the decision of the
20   Commissioner of Social Security denying her application for Supplemental Security
21   Income ("SSI") payments.  The parties filed consents to proceed before a United
22   States Magistrate Judge (ECF Nos. 11, 12) and briefs (ECF Nos. 18 ("Pl.'s Br."),
23   and 19 ("Def.'s Br.")) addressing the disputed issues in the case.  The matter is now
24   ready for decision.  For the reasons set forth below, the Court finds that this matter
25   should be remanded.
26
27   _____
28        [1]   In the interest of privacy, this Order uses only the first name and last initial of
     the non-governmental party in this case.

## II.    ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff was born in 1959.  (AR 271.)  She has past relevant work as a sandwich maker.  (AR 24, 84.)

Plaintiff filed an application for SSI payments on August 1, 2019, alleging disability commencing on June 1, 2010.  (ECF No. 15, Administrative Record ("AR") 17; *see also* AR 271-77.)  Plaintiff's application was denied at the initial level of review and on reconsideration.  (AR 17, 105, 115.)  A telephonic hearing was held before Administrative Law Judge Sally C. Reason ("the ALJ") on May 10, 2021.  (AR 17, 63-88.)  At the hearing, Plaintiff amended the alleged onset date to August 1, 2019, the date the application was filed.  (AR 65.)

On June 1, 2021 the ALJ issued an unfavorable decision applying the five-step sequential evaluation process for assessing disability.  (AR 17-25); *see* 20 C.F.R. § 416.920(b)-(g)(1).  At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 1, 2019, the application date. (AR 19.)  At step two, the ALJ determined that Plaintiff has the following severe impairments:  mild persistent left shoulder impingement; mild perrsistent left epicondylitis; mild degenerative changes of the left knee; and hypertension.  (AR 20.)  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix 1 of the Regulations.  (AR 20); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.  The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 416.967(c), except as follows:

> [S]he can only frequently reach overhead with left, non-dominant, upper extremity; she can frequently use foot controls with the left lower extremity; she can frequently climb stairs, ladders, and scaffolds and work around heavy machinery and heights.

(AR 20-21.)  At step four, the ALJ determined that Plaintiff is able to perform her past relevant work as a sandwich maker.  (AR 24.)  Based on these findings, the

2

1  ALJ found Plaintiff not disabled since the date the application was filed.  (AR 25.)

2  The Appeals Council denied review of the ALJ's decision on March 30, 2022.

3  (AR 1-6.)  This action followed.

4

5  ### III.   GOVERNING STANDARD

6  Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to

7  determine if:  (1) the Commissioner's findings are supported by substantial

8  evidence; and (2) the Commissioner used correct legal standards.  *See Carmickle v.*

9  *Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r*

10  *Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  "Substantial evidence . . . is

11  'more than a mere scintilla.'  It means -- and only means -- 'such relevant evidence

12  as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v.*

13  *Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v. Comm'r of*

14  *Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and

15  citation omitted).

16  The Court will uphold the Commissioner's decision when "the evidence is

17  susceptible to more than one rational interpretation."  *See Molina v. Astrue*, 674

18  F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

19  404.1502(a).  However, the Court may review only the reasons stated by the ALJ in

20  his decision "and may not affirm the ALJ on a ground upon which he did not rely."

21  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  The Court will not reverse the

22  Commissioner's decision if it is based on harmless error, which exists if the error is

23  "inconsequential to the ultimate nondisability determination, or if despite the legal

24  error, the agency's path may reasonably be discerned."  *Brown-Hunter v. Colvin*,

25  806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

26

27  ### IV.   DISCUSSION

28  Plaintiff raises the following issues challenging the ALJ's findings and

3

1    determination of non-disability:  (1) the ALJ improperly rejected the medical

2    opinions of Oren Gerald Epstein, M.D., H. Han, M.D., and H. Ford, M.D.; and (2)

3    the ALJ failed to offer legitimate reasons for rejecting Plaintiff's subjective

4    symptom complaints.  (Pl.'s Br. 1.)   As discussed below, the Court agrees with

5    Plaintiff and finds that remand is appropriate.

6

7    **A.    MEDICAL OPINIONS**

8        **1.    Legal Standard**

9        For claims filed on or after March 27, 2017, new regulations apply that

10   change the framework for how an ALJ must evaluate medical opinion evidence.  *See*

11   Revisions to Rules Regarding Evaluation of Medical Evidence, 2017 WL 168819,

12   82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new

13   regulations provide the ALJ will no longer "give any specific evidentiary weight,

14   including controlling weight, to any medical opinion(s) or prior administrative

15   medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R.

16   §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the

17   persuasiveness of all medical opinions or prior administrative medical findings.  *See*

18   20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The factors for evaluating the

19   persuasiveness of medical opinions and prior administrative medical findings

20   include supportability, consistency, relationship with the claimant (including the

21   length of the treatment, frequency of examinations, purpose of the treatment

22   relationship, extent of the treatment relationship, and the examining relationship[2]),

23   specialization, and "other factors that tend to support or contradict a medical opinion

24   or prior administrative medical finding" (including, but not limited to, "evidence

25

26   ───────────────────

27       [2]   The regulations state that "[a] medical source may have a better
     understanding of [the claimant's] impairments if he or she examines [the claimant]
28   than if the medical source only reviews evidence in [the claimant's] folder."  20
     C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v).

showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Agency's] disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors and, therefore, the ALJ is required to explain how both factors were considered.[3] *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how factors such as the "[r]elationship with the claimant," "[s]pecialization," and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions are equally well-supported and consistent with the record but are not "exactly the same," she must articulate how she "considered the other most persuasive factors." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). Further, while these new regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ must still provide an explanation supported by substantial evidence for finding a medical opinion unpersuasive. *See, e.g.*, *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (noting that even under the new regulations, an ALJ cannot reject an

---

[3] Supportability and consistency are explained in the regulations as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

5

examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence).

### 2.   The Medical Opinions of Dr. Epstein, Dr. Han, and Dr. Ford

The ALJ considered the opinions of reviewing physicians Dr. Han and Dr. Ford on initial review and reconsideration, respectively.  (AR 23-24, 110-12, 121-23.)

On February 4, 2020, Dr. Han, who reviewed the evidence from approximately July 13, 2019, through October 14, 2019, found Plaintiff capable of light work, with only occasional postural activities, and stated that she must avoid concentrated exposure to extreme cold and even moderate exposure to hazards.  (AR 23, 110-12.)  He also assessed limitations in Plaintiff's ability to push and pull as per the lifting and carrying restrictions, and that she should avoid uneven terrain. (AR 111, 112.)

On June 23, 2020, on reconsideration, Dr. Ford, who reviewed the medical evidence from approximately July 13, 2019, through June 12, 2020, also found Plaintiff capable of light work, with similar limitations, but additionally found limitations in Plaintiff's ability to use foot controls on the left side, and opined that she could not climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to wetness.  (AR 120, 122-23.)  Both Dr. Ford and Dr. Han opined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her symptoms were substantiated by the objective evidence alone.  (AR 110, 121.)

In October 2019, Dr. Epstein, an examining physician, interpreted x-rays of Plaintiff's left knee to reflect "left knee osteoarthritis *moderate* in medial and patellofemoral compartment," and discussed Plaintiff's options with her, including surgery; he also administered a Kenalog injection.  (Pl.'s Br. 3 (quoting AR 381 and adding emphasis).)  In August 2020, Dr. Epstein conducted an orthopedic

evaluation, at which he noted, among other things, left elbow visible swelling and tenderness of the lateral epicondyle, as well as left knee positive for tenderness about the medial and patellofemoral joint lines.  (Pl.'s Br. 4 (citing AR 846, 847).)  Dr. Epstein completed a statement on Plaintiff's behalf based on his examination findings, indicating that due to osteoarthritis of her left knee and lateral epicondylitis of the left elbow, Plaintiff was able to stand and walk for 25% of the workday and able to lift or carry ten pounds.  (Pl.'s Br. 4 (citing AR 496).)  He also administered another injection in Plaintiff's left elbow.  (Pl.'s Br. 4 (citing (AR  847, 970).)

On January 27, 2021, Dr. Epstein again evaluated Plaintiff's left elbow, finding it positive for swelling and tenderness to palpation of the lateral epicondyle, with limited range of motion, and pain with resisted wrist extension and elbow extension.  (Pl.'s Br. 5 (citing AR 1383).)  He also examined her left knee and found it positive for tenderness.  (Pl.'s Br. 5 (citing AR 1383).)  Dr. Epstein administered a Kenalog injection of the left elbow and the left knee.  (Pl.'s Br. 5 (citing AR 1383).)  He also completed another statement on Plaintiff's behalf.  He again found that she was restricted to walking and standing no more than 25% of the workday, and that she was unable to lift or carry more than 10 pounds.  (Pl.'s Br. 5 (citing AR 1100).)

### 3.    The ALJ's Findings

The ALJ rejected the opinions of Dr. Han and Dr. Ford, stating that she did not find those opinions "to be persuasive because they are overly restrictive."  (AR 23.)  She noted that there "are very few findings to support such extreme limitations in lifting; however, neither Dr. Han [n]or Ford opined any restrictions to [Plaintiff's] use of her left upper extremity, which is also not consistent with the evidence."  (AR 23-24.)  She found the opinions of Dr. Epstein to be "not persuasive," because his limitations were based "on a diagnosis of cervical radiculopathy which is not

7

supported by any objective medical evidence,"[4] and because "the limitations related
to sitting, standing and walking are extreme and not supported by the documented
'mild' objective findings contained in the record."  (AR 24.)

   The ALJ's finding that neither Dr. Han nor Dr. Ford "opined any restrictions"
with respect to Plaintiff's use of her left upper extremity is not supported by
substantial evidence.  In fact, both physicians limited Plaintiff in her ability to lift,
carry, push, and pull with her upper extremities to no more than 20 pounds
occasionally, which would seem to be an upper extremity limitation.  In contrast,
although the ALJ limited Plaintiff to "frequent" overhead reaching with her left arm,
she also determined Plaintiff could lift and/or carry up to 50 pounds at a time, and
frequently lift or carry objects weighing up to 25 pounds, where frequently is
defined by the regulations as from one-third to two-thirds of an eight-hour workday.
(AR 20); SSR 83-10, 1983 WL 31251, at *6 (noting that, in medium-level
occupations, "[b]eing able to do frequent lifting or carrying of objects weighing up
to 25 pounds is often more critical than being able to lift up to 50 pounds").

----

   [4]  As noted by Plaintiff and acknowledged by Defendant, Dr. Epstein did *not*
base his opinion on a diagnosis of cervical radiculopathy.  (Pl.'s Br. 10, Def.'s Br. 5-
6.)  As Defendant recognizes, Dr. Epstein's opinion was based on Plaintiff's
diagnoses of left knee osteoarthritis, and left elbow lateral epicondylitis.  (Def.'s Br.
6 (citing ECF 496).)  It was treating physician Michael Bazel, M.D. who
consistently diagnosed cervical radiculopathy between at least January 2018 and
June 2020 (based, it seems, on his findings of abnormal neck range of motion,
abnormal left shoulder range of motion, numbness in the left upper extremity,
impingement signs present, positive Finkelstein's test, and tenderness on palpation
of the neck and left upper extremity), and who noted that diagnosis as supporting his
June 2020 Medical Source Statement finding Plaintiff capable of sedentary work.
(Def.'s Br. 6 (citing AR 20, 22, 24, 366-68, 475-84, 486-95).)  The ALJ also
discounted Dr. Bazel's opinion as "unsupported by the record," notwithstanding Dr
Bazel's objective clinical findings on examination.  (AR 24.)

The medical expert, orthopedic surgeon John Francis Kwock,[5] M.D., testified at the hearing that the record reflects only "two medically determinable impairments or conditions":  a "mild, persistent left shoulder impingement problem," and a "mild, persistent left lateral epicondylitis which is going on."  (AR 68.)  With respect to Plaintiff's knee, cervical, and elbow issues, Dr. Kwock generally asserted that although these issues were mentioned in the record, "there are no radiological studies or other types of objective studies regarding these areas," and "[w]ithout those, it's very difficult to establish from a medical sense that these entities exist from my review."  (AR 68.)  After the ALJ questioned Dr. Kwock about an MRI of Plaintiff's left *shoulder* in the record,[6] Dr. Kwock instead noted there had been two radiological studies of Plaintiff's left *elbow* -- an MRI in December 2010, and an elbow x-ray done in December 2019,[7] and concluded that "even with these radiological studies they are remote enough to make the diagnosis [of mild, persistent left lateral epicondylitis] tenuous."  (AR 69.)

The ALJ also questioned Dr. Kwock about a July 2019 x-ray of Plaintiff's left knee reflecting mild degenerative changes, and mild to moderate joint effusion and asked whether Dr. Kwock was "able to . . . support the diagnosis of osteoarthritis of the knees as a restriction" based on this diagnostic x-ray.  (AR 69, 70.)  Dr. Kwock replied:  "Well, again, in the absence of an actual radiological study of the knee

---

[5]  The hearing transcript and both parties refer to this doctor as Dr. "Kwak" or Dr. "Kwan."  The Court assumes that the ALJ -- who referred to him in the decision as Dr. Kwock -- had the benefit of Dr. Kwock's resume or other reliable source and used the correct spelling of his name, rather than the phonetic spelling utilized by the court reporter.  For that reason, the Court uses the ALJ's spelling.

[6]  As noted by the ALJ, the December 2010 MRI of the left shoulder showed "mild impingement with tendinitis and possible partial thickness tear of the rotator cuff," and the December 2010 MRI of the left elbow reflected "relative hypertrophic changes of the proximal ulna."  (AR 21-22 (citations omitted).)

[7]  The December 2019 x-ray of the left elbow showed "no acute fracture, normal alignment, no significant joint disease, and no significant soft tissue abnormality."  (AR 22 (citation omitted) (internal quotation marks omitted).)

9

present in this record, no.  I'm not willing to stick my neck out and make that diagnosis because . . . I would not be able to back it up."  (AR 69.)  The ALJ then referred Dr. Kwock to the July 2019 x-ray of the left knee in the record, noted again that the report indicated "no acute fracture, alignment normal, mild degenerative change, [and] mild to moderate joint effusion," and again asked whether "that wasn't enough to support the diagnosis of osteoarthritis that would be limiting for [Plaintiff]."  (AR 70.)  After locating the specified reference in the record before him, Dr. Kwock resolutely noted the following:

> [T]his is -- it's not an actual report.  It looked like a cut-and-paste of the report -- in the body of the progress note.  That's still not enough I think. I think I could accept a diagnosis of maybe some mild osteoarthritis present in this knee for a 60-some-odd-year-old individual.  But again, without a thorough description of the amount of arthritis, where it is, et cetera, I don't think it's going to change things too much.

(AR 70-71.)  Dr. Kwock then opined that Plaintiff would be limited to "medium work," and testified as follows:

> Well, it's a medium exertional level.  So ten pounds without limitation, 20 pounds frequently, 50 pound[s] occasionally.  There would be a sit, stand, and walk set of parameters in my opinion.  But she could still sit for eight hours out of eight, stand and walk six hours out of eight.  And that's because of the knee.  With the upper extremities, the single limitation would be overhead reaching with the left reduced to frequent.
>
> Otherwise, there are no other limitations with the upper extremities. There are no limitations to the use of the feet.  No.  Because of the arthritis it would be limited to frequent on the affected side.  And I think that was left? . . . And no limitations on the right.

(AR 72-73.)  Dr. Kwock also opined that Dr. Bazel's June 12, 2020, opinion and Dr. Epstein's January 27, 2021, opinion, opining Plaintiff is capable of sedentary and light work, respectively, were inconsistent with the July *2011* consultative examination done by Dr. Gonzalez, who found Plaintiff capable of medium-level work with frequent overhead lifting due to her "tennis elbow" issues, and with a brief mention in an October 2019 treatment note of normal knee flexion bilaterally about which Dr. Kwock concluded that "this [October 2019 "normal knee" range of

10

motion] is not an examination that paints you a picture of [a] person capable to doing sedentary-type activities [sic]."[8]  (AR 69, 75-76.)

The ALJ found Dr. Kwock's opinion of Plaintiff's "mild" musculoskeletal impairments to be "most persuasive."  (AR 23.)  She noted that Dr. Kwock is a board-certified orthopedist with knowledge of the disability program, and that he "referenced the objective medical evidence used to support his limitations during his testimony."  (AR 23.)  The ALJ concluded that Dr. Kwock's opinion "was well-supported by and consistent with the objective medical evidence."  (AR 23.)  She also found the July 3, 2011, opinion of Dr. Gonzales -- who found Plaintiff capable of medium work but able to "only frequently" perform overhead activities with the left upper extremity, and only "frequently perform fine and gross manipulations with the left hand" -- to be "persuasive."  (AR 24.)  She determined that Dr. Gonzales' opinion was consistent with the objective medical evidence and "supported by the opinion of Dr. Kwock."[9]  (AR 24.)  As previously noted, the ALJ found all the other opinions in the record that determined Plaintiff is capable of no more than light work -- including the more recent opinions of Dr. Han, Dr. Ford, Dr. Epstein, and Dr. Bazel -- to be not persuasive.[10]

Plaintiff contends that Dr. Kwock "was woefully unaware of the entire contents of the medical file"; he was unaware of the presence of the knee imaging;

---

[8]  The Court assumes Dr. Kwock intended to say that the October 2019 examination does not paint a picture of a person "capable of doing [no more than] sedentary-type activities."

[9]  Because Dr. Gonzales' opinion was the "remote" 2011 opinion relied on by Dr. Kwock in forming his 2021 opinion regarding Plaintiff's elbow issues (and his finding that Dr. Epstein's opinion for light work was inconsistent with that report), it is not surprising that Dr. Gonzales' opinion is "supported by the opinion of Dr. Kwock."

[10]  Plaintiff notes that the ALJ who had considered her previous application, and issued a decision denying disability on July 3, 2019, had also determined that Plaintiff was limited to no more than light work.  (Pl.'s Br. 11 (citing AR 95).)

he failed to account for any of the findings favorable to Plaintiff, including occupational therapy notes that demonstrated significant left lower extremity weakness and antalgic gait; and he ignored or was unaware of multiple records showing restricted range of motion, that surgery was suggested, that deformity was evident, that the need for pain medication and Kenalog injections persisted, and that physical therapy was intolerable due to increased pain.  (Pl.'s Br. 11 (citing AR 381, 383, 386, 389, 418, 847, 1007, 1383).)  She notes that Dr. Kwock found  "it was 'difficult to establish' cervical and knee problems," because "he saw no 'actual radiological studies or 'other types of objective studies.'"  (Pl.'s Br. 6 (citing AR 68, 69).)  As such, Plaintiff argues that it is Dr. Kwock's opinion that "is unsupported by the evidence," as he failed to support his findings, and relied on only outdated evidence and one other 2019 item pertaining to the "established diagnosis" of osteoarthritis of the left knee -- a "diagnosis that Dr. Kwan [sic] did not want to stick his neck out to make."  (Pl.s' Br. 11 (citing AR 69) (internal quotation mark omitted).)

Defendant responds that Dr. Kwock "testified that he had looked at Plaintiff's records, and there is nothing to suggest that he did not look at all of them, given that he had no questions about and no need to clarify any aspects of the record."  (Def.'s Br. 4.)  The Court is not persuaded by the false logic of this argument.

Defendant also challenges Plaintiff's assertion that Dr. Kwock's opinion was "the *only* opinion of record that Plaintiff could perform medium level work," noting that Dr. Gonzalez' *2011* opinion also found Plaintiff "capable of a restricted range of medium work" and asserting that "the Court should not countenance [Plaintiff's] mischaracterization of the record."  (Def.'s Br. 5.)  As Plaintiff noted, however, Dr. Gonzalez' 2011 opinion was "outdated."  (Pl.'s Br. 11.)  Given the remoteness of Dr. Gonzalez' opinion, the Court declines to fault Plaintiff for failing to include Dr. Gonzalez' opinion in her statement that only Dr. Kwock opined a medium level of work.  In any event, Defendant points to no other opinions in the record between

12

2011 (or even since August 1, 2019, Plaintiff's filing date) and the May 2021 hearing date finding Plaintiff capable of medium work.

Plaintiff argues that the ALJ's error in failing to properly credit the opinions of Drs. Ford, Han, and Epstein, whose opinions were all elicited between June 2019 and the date of the decision, was not harmless because if those opinions -- finding Plaintiff limited to no more than light work -- had been credited, "a finding of disability would have been directed under the Medical Vocational Guidelines." (Pl.'s Br. 11-12.)  She explains that because she "was at all times 'closely approaching retirement age' and possesses a high school education, and past work that was medium in exertion and unskilled" and, even if she could perform light work (which she does not concede), "GRID Rule 202.04 directs a finding of disabled."  (Pl.'s Br. 11-12 (citing AR 77, 84).)

### 4.    Analysis

Based on the record before it, the Court concludes that in relying primarily on Dr. Kwock's opinion, the ALJ appears to have ignored or rejected significant and probative portions of the record regarding Plaintiff's shoulder, elbow, and/or knee impairments, subjective symptom complaints (to be discussed further herein), and treatment -- especially the evidence of record dating between June 2019 and the date of the decision finding Plaintiff capable of no more than light level work.

Dr. Kwock's disjointed testimony did not reflect a complete understanding and knowledge of the record.  For instance, he stated that he found Plaintiff's left upper extremity limitations to be less significant than those opined by Dr. Epstein (who treated Plaintiff between 2019 and 2021), based on a *2010* elbow x-ray showing what he termed to be "a case of tennis elbow," and because he saw no evidence "that would reflect" that Plaintiff's "tennis elbow" had *not* resolved or run its course -- despite an ample amount of more recent documentation to the contrary as discussed below.  (AR 74.)  In fact, he explained that the only reason he even

13

1  considered the left elbow to be a "severe impairment is simply because if I hadn't

2  done that I would have to say there was no impairment established with this record."

3  (AR 74.)  Even if this statement is considered to be a medically valid reason for

4  finding a severe impairment (which it is not), it also directly contradicts Dr.

5  Kwock's testimony that Plaintiff also has a "mild, persistent left shoulder

6  impingement problem."  (AR 68.)

7       Similarly, with respect to Plaintiff's left knee and cervical/shoulder issues

8  generally, and despite the fact that the record included evidence of a left shoulder

9  MRI in December 2010 reflecting narrowing of the acromiohumeral joint space,

10  mild impingement with tendenitis present, and the possibility of a partial thickness

11  tear of the rotator cuff (AR 21, 68-69, 361), as well as several left knee x-rays (AR

12  69-70, 71 (citing AR 396)), Dr. Kwock opined "there are no radiological studies or

13  other types of objective studies regarding these areas."  (AR 68.)  In fact, Dr. Kwock

14  appeared to be unaware of most of the objective studies in the record until the ALJ

15  pointed them out to him, and even then tried to discount the findings because either

16  the actual MRI or x-ray or physical report was not included in the record.  (AR 68-

17  71.)

18       Dr. Kwock also specifically explained that the opinions in the record

19  reflecting no more than a light range of work (e.g., the opinions of Dr. Epstein, Dr.

20  Bazel, Dr. Han, and Dr. Ford) were inconsistent with (1) Dr. Gonzalez' 2011

21  evaluation finding Plaintiff capable of medium work, and (2) an October 2019

22  medical record that he stated reflected "intact motor sensory function" in Plaintiff's

23  lower extremity and normal knee range of motion at that treatment.  (AR 75-76.)

24  Although Dr. Kwock did not provide a citation for this latter record, the Court finds

25  it reasonable to assume that he was referring to an October 14, 2019, treatment note

26  from Plaintiff's visit to Woodland Hills Medical Center, which reflected bilateral

27  "Range of motion . . . left knee . . . 130 flexion" -- the numerical range of motion on

28  evaluation referred to by Dr. Kwock in his testimony.  (*Compare* AR 75-76 (stating

14

1   that the October 2019 record reflected "hyperextension to a flexion of 130 degrees

2   bilaterally") *with* AR 380 (reflecting range of motion of right and "left knee 5

3   extension, 130 flexion").)

4        What Dr. Kwock did *not* mention, however, is that the same October 14,

5   2019, treatment note also indicated bilateral varus deformity of the knees;

6   tenderness to palpation of the left knee medial and patellofemoral joint line; bilateral

7   patellofemoral crepitus; left knee osteoarthritis "moderate in medial and

8   patellofemoral compartment" (thus contradicting Dr. Kwock's testimony that the

9   record provided no description of "the amount of arthritis, where it is, et cetera");

10  and that treatment options, including surgery, were discussed with Plaintiff who

11  opted for "conservative management, which includes weight loss, low impact

12  aerobic exercise, assistive devices, pain control with non steroidal anti inflammatory

13  medications and cortisone injections."  (AR 381.)  And, at that October 14, 2019,

14  treatment visit, Plaintiff's left knee was injected with Kenalog.  (AR 381.)

15       Dr. Kwock also failed to acknowledge a wide range of probative and

16  relatively recent evidence relating to Plaintiff's left knee, shoulder, and elbow

17  issues.  For instance, with respect to Plaintiff's knee, he did not mention notes

18  reflecting the following:  left Trendelenburg hip drop, a mild antalgic gait when

19  ambulating without a cane, and tenderness on palpation (AR 1023); weakness of the

20  quadriceps, gluteus medius and maximus, and the hamstrings; pain and swelling in

21  the lower extremities (AR 81, 322, 383, 388, 1023); mild to moderate joint effusion

22  (AR 1307); pain medication and Kenalog/cortisone injections (AR 381, 847, 1383);

23  and no tolerance for physical therapy due to pain (AR 1007.)  With respect to

24  Plaintiff's left elbow and shoulder/cervical pain, Dr. Kwock failed to mention recent

25  treatment visits reflecting positive Finkelstein's test; positive arm drop test;

26  numbness and positive impingement signs; abnormal range of motion of the left

27  shoulder; abnormal range of motion for the cervical spine; tenderness of the medial

28  epicondyle; pain in the left elbow with activity; reduced grip strength on the left

extremity, pain with grip testing, restricted middle finger extension, pain with resistance to wrist extension, and pain over the forearm extensor mass; tenderness of the neck and left upper extremity; treatment with pain medication and Kenalog/ cortisone injections; and swelling and tenderness of the left elbow.  (*See, e.g.,* AR 418, 475, 477, 479, 970.)

The Court assumes that even under the new regulations, an ALJ may not cherry pick from the record in making her supportability or consistency finding.  *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2011) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment"); *Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014); *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011).  Here, in finding Dr. Kwock's opinion to be persuasive and supported by the objective evidence of record, despite its being largely based on two pieces of evidence -- a 2011 report that was well outside the amended onset date, and a 2019 snippet from a far more extensive 2019 treatment note -- this is essentially what the ALJ did.

In finding Dr. Gonzalez' 2011 report to be persuasive, the ALJ only noted Dr. Gonzalez' finding that Plaintiff is capable of medium work with some overhead limitations, and summarily noted that "[t]hese limitations are consistent with the objective medical evidence and supported by the opinion of Dr. Kwock who testified at the hearing."  (AR 24.)  She provided no explanation as to how those 2011 limitations are consistent with the objective medical evidence throughout the record, including the more recent evidence.  Her circular reasoning in finding that the 2011 report is supported in 2021 by the hearing testimony of a medical expert who relied on that 2011 report, does nothing to enhance the supportability of that report ten years later.

Additionally, although the ALJ noted Dr. Gonzalez' limitations were consistent with the objective medical evidence, Dr. Gonzalez also stated that he had

16

no medical records to review (AR 369), which means that he did not review the December 2010 MRI of the left shoulder showing narrowing of the acromiohumeral joint space, increased signal at the superior lateral margin of the rotator cuff, mild impingement with tendinitis present, and the possibility of a partial thickness tear of the rotator cuff.  (AR 361.)  Neither did he review the December 2010 MRI of the left elbow, showing relative hypertrophic changes of the proximal ulna.  (AR 363.)  Dr. Gonzalez did report, however, that his physical examination was "significant for mild tenderness to palpation of the lateral epicondyle as well as in the proximal aspect of the extensor carpi radialis brevis and longus muscle mass."  (AR 372.)  He found Plaintiff capable of medium level work, with a limitation to frequent overhead reaching with her left upper extremity, and a limitation to frequent fine and gross manipulative movements with her left hand.  (AR 372-73.)  Yet, despite finding Dr. Gonzalez' opinion to be persuasive, the ALJ did not include Dr. Gonzalez' limitation to frequent fine and gross manipulations with the left hand in her RFC determination, neither did she explain why that limitation was disregarded.[11]

In assessing supportability, the regulations emphasize that "the *more relevant*" the supporting evidence is, the "more persuasive" it is.  The Court is not convinced by the ALJ's (or Dr. Kwock's) explanation that a 2011 report and a sound bite taken from a 2019 treatment visit are more "relevant" and, therefore, more persuasive than the 2018 through 2021 reports and/or examinations of Drs. Epstein, Han, Ford, and even Bazel.

Based on the entire record before it, including Dr. Kwock's testimony on which the ALJ heavily relied, the Court cannot conclude that the ALJ's consideration of the supportability and consistency of the various medical opinions

---

[11]  It appears that a limitation to frequent fingering and handling with the left hand may be *inconsistent* with the *constant* fingering and handling necessary for performing Plaintiff's past relevant work as a sandwich maker.  DOT No. 317.664-010.

1  of record was supported by substantial evidence.

2      Remand is warranted on this issue.

3

4  **B.    SUBJECTIVE SYMPTOM TESTIMONY**

5      **1.    Legal Standard**

6      In evaluating a claimant's subjective symptom testimony, an ALJ must

7  engage in a two-step analysis. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36

8  (9th Cir. 2007); 20 C.F.R. § 404.1529(c). First, the ALJ must determine whether the

9  claimant has presented objective medical evidence of an underlying impairment

10 which "could reasonably be expected to produce the pain or other symptoms

11 alleged." *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341,

12 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first step and there

13 is no evidence of malingering, "'the ALJ can reject the claimant's testimony about

14 the severity of her symptoms only by offering specific, clear and convincing reasons

15 for doing so.'" *Id.*, 504 F.3d at 1036; (quoting *Smolen v. Chater*, 80 F.3d 1273,

16 1281 (9th Cir. 1996)). At the same time, the "ALJ is not required to believe every

17 allegation of disabling pain, or else disability benefits would be available for the

18 asking, a result plainly contrary to the Social Security Act." *Smartt v. Kijakazi*, 53

19 F.4th 489, 499 (9th Cir. 2022) (citation and internal quotation marks omitted).

20

21     **2.    The ALJ's Determination**

22     The ALJ discounted Plaintiff's subjective complaints because they were "not

23 entirely consistent with the medical evidence and other evidence in the record."

24 (AR 21.) The ALJ then summarized the medical evidence as to each of Plaintiff's

25 severe impairments. (AR 21-23.) After doing so, she concluded:

26     Ultimately, [Plaintiff's] allegations of extreme functional limitation is
       [sic] undermined by the diagnostic and other objective medical evidence,
27     which conspicuously fails to show a physiological basis for the extreme
       pain and limitation alleged. Weighing all relevant factors, the
28

18

undersigned concludes that the objective medical evidence simply does not warrant any additional limitations beyond those established in the residual functional capacity contained herein.

(AR 23.)

### 3.   Analysis

The Court determines that in discounting Plaintiff's subjective symptom testimony, the ALJ relied *solely* on the fact that Plaintiff's testimony was not consistent with the objective medical evidence of record.

Although not expressly relied on by the ALJ, Defendant suggests that Plaintiff's subjective symptom testimony was properly discounted for the following additional reasons:  her  "treatment history belied her subjective complaints"; in February 2020, Plaintiff admitted to stopping her medications; and she began occupational and physical therapy in late 2020 but was discharged after only one visit "for 'fail[ure] to follow-up with therapy.'"  (Def.'s Br. 11-12 (citing AR 21-23).)  Defendant generally cites to the ALJ's medical summaries to support these arguments, but these were *not* specific, clear and convincing reasons supported by substantial evidence given by the ALJ for discounting Plaintiff's subjective symptom testimony.  The ALJ's decision may not be affirmed "on a ground upon which [she] did not rely."  *Orn*, 495 F.3d at 630; *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

Where, as here, the ALJ fails to state legally sufficient reasons for discounting a claimant's subjective complaints, a court ordinarily cannot properly affirm the administrative decision.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006).  The Court is unable to conclude that the ALJ's errors in evaluating Plaintiff's subjective complaints were "harmless" or "inconsequential to the ultimate non-disability determination."  *Brown-Hunter*, 806 F.3d at 492.

19

1

**V.   REMAND FOR FURTHER PROCEEDINGS**

2

Remand is appropriate, as the circumstances of this case suggest that further

3
administrative proceedings could remedy the ALJ's errors.  *See Dominguez v.*

4
*Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that

5
further administrative proceedings would serve no useful purpose, it may not

6
remand with a direction to provide benefits."); *Treichler v. Comm'r of Soc. Sec.*

7
*Admin.*, 775 F.3d 1090, 1101, n.5 (9th Cir. 2014) (remand for further administrative

8
proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211

9
F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for

10
the immediate payment of benefits is appropriate where there are "sufficient

11
unanswered questions in the record").

12

13

**VI.   CONCLUSION**

14

For all the foregoing reasons, **IT IS ORDERED** that:

15

(1) the decision of the Commissioner is **REVERSED** and this matter

16

    **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further

17

    administrative proceedings consistent with this Memorandum Opinion and

18

    Order; and

19

(2) Judgment be entered in favor of Plaintiff.

20

21

**IT IS SO ORDERED**.

22

23

DATED:  March 23, 2023

24

25

_____

26

GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

27

28